**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ulysses Altamirano, | No. CV-25-02257-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Board of Regents, *et al.*, | |
| Defendants. | |

Before the Court is Arizona Board of Regents' ("ABOR") Motion to Dismiss First Amended Complaint (Doc. 41) and Michael Crow, Peter J. Fischer, Lou Ann Denny and Erin Singla's ("Individual Defendants") Motion to Dismiss First Amended Complaint (Doc. 47), each of which have been fully briefed. (Docs. 43, 46, 53, 54.)

As a preliminary matter, Plaintiff requests leave to exceed the page limit for his responsive brief to ABOR's Motion (Doc. 44) and has been met with no opposition. Upon review and good cause appearing, the Court will grant Plaintiff's request for leave and considers that responsive brief fully in reaching its decision below.

## I.    BACKGROUND[1]

Arizona State University ("ASU") participates in federal student financial assistance programs and must comply with federal law to remain eligible to disburse those funds. (Doc. 25, FAC, ¶ 35.) ASU may disburse funds to students who are eligible to receive them under its Satisfactory Academic Progress ("SAP") standards. (FAC ¶ 37.)

---

[1] When referring to papers submitted by the parties, the Court cites to the page number as generated by the Electronic Court Filing system, not the parties' own page demarcation.

According to Plaintiff, ASU may also direct retroactive disbursements and design SAP policies, appeal procedures, and timelines that include "disability-aware review before definitively refusing to consider a student for late or retroactive disbursement within federal deadlines." (FAC ¶¶ 36–37, 42.)

Plaintiff enrolled in an undergraduate program at ASU that began the Fall semester of 2019. (FAC ¶ 26.) In the Fall semester of 2021, Plaintiff registered with ASU's disability services office and was approved for academic accommodations. (FAC ¶ 30.) According to Plaintiff, he had "medical and psychological conditions that substantially limited one or more major life activities, including concentration, organization, time management, and the ability to manage complex administrative and financial tasks associated with his education." (FAC ¶ 30.) He reportedly received academic accommodation for his disabilities during the 2024-25 academic year, and during that period he received intensive mental-health treatment. (FAC ¶¶ 31, 65–66.) ASU's disability services office maintained documentation of his diagnoses and limitations. (FAC ¶ 67.)

Plaintiff relied on federal student aid to fund his studies at ASU, including for the Summer and Fall semesters of 2024. (*See* FAC ¶¶ 29, 45.) Before the application for federal student aid came due for the 2024-25 academic year, "Plaintiff was unable to timely complete the [application] due to a combination of disability-related symptoms, intensive outpatient psychological treatment, and serious family-related disruptions, including difficulty obtaining necessary tax and income information from deported or otherwise unavailable family members." (FAC ¶ 46.) He registered for his classes nonetheless, believing federal guidance that retroactive aid would be disbursed to him so long as he filed an application by June 30, 2025. (FAC ¶ 47.) While Plaintiff "understands that ASU maintains internal timelines for SAP appeal submission and review" that expired October 2024 for the Fall 2024 semester, ASU's materials did not clearly explain that a SAP appeal was necessary to receive a retroactive disbursement even if there was no active federal student aid application on file. (FAC ¶¶ 48–50.)

. . .

- 2 -

Plaintiff completed his coursework for the Summer and Fall 2024 terms, incurring $14,000 in fees owed to ASU. (FAC ¶ 45.) He completed all academic requirements for his degree at the end of the Fall semester of 2024, including "substantially more credit hours than are typically required for a single bachelor's degree." (FAC ¶¶ 27–28.)

In March 2025, after he completed his coursework, Plaintiff received emails from ASU notifying him that his $14,000 debt would be referred to a third-party collection agency within two weeks if he took no action and provided him a "general number" but did not outline a procedure for Plaintiff to dispute the amount owed, review it, or be referred to an internal hearing or conference. (FAC ¶¶ 55, 61.) After two weeks, ASU referred Plaintiff's debt to a collection agency that, in turn, reported the debt to credit reporting agencies. (FAC ¶ 56.) Only after the referral did Plaintiff "attempt[] to explore payment options with ASU's Student Business Services." (FAC ¶ 58.) ASU did not offer to pause or recall the referral, did not notify him of a procedure to review the debt or other relief, and instead informed him that he would have to negotiate a payment plan directly with the collection agency. (FAC ¶ 58.) His credit score dropped ninety points between March and June 2025. (FAC ¶ 59.)

In June 2025, Plaintiff submitted his federal student aid application for the 2024-25 academic year and was notified that he was eligible for aid. (FAC ¶ 51.) In that same month, Plaintiff's disability counselor provided a "Full-Time Equivalency" ("FTE") letter to ASU that stated Plaintiff was disabled during the 2024-25 academic year and could be treated as a full-time student even while enrolled in fewer credit hours. (FAC ¶¶ 68, 93.) During that time, Plaintiff personally informed the dean's office that he was receiving intensive mental-health services, his disabilities interfered with his ability to meet federal student aid and payment deadlines, and he needed his physical diploma released to him so he could pursue employment opportunities. (FAC ¶¶ 69, 91.)

Sometime later, Plaintiff asked ASU's financial aid office whether he would receive a retroactive disbursement for the Summer and Fall 2024 terms and about SAP appeal options. (FAC ¶ 52.) ASU officials responded that the SAP appeal deadline had already

passed and financial aid would not be processed for already-completed terms. (FAC ¶ 52.) According to Plaintiff, this was the first time he received clear notice that a student in his position would not receive retroactive disbursement even if the federal student aid application was completed before the federal deadline. (FAC ¶ 53.) Plaintiff also alleges that he received no prior notice that ASU would not consider his disability in deciding whether it would review his eligibility for aid. (FAC ¶¶ 53, 71.) ASU declined to review his eligibility, modify its procedures, or refer him to "campus ADA/504 coordinator" even considering the FTE letter and Plaintiff's academic accommodations. (FAC ¶¶ 71–72.) ASU informed Plaintiff that it would consider releasing his diploma or addressing the financial hold on his account only if he provided documentation that he was denied an employment opportunity because he could not present a physical diploma. (FAC ¶ 95.) According to Plaintiff, no formal policy reflects this requirement and, instead, was created "ad hoc in his individual case, after he sought help." (FAC ¶ 96.)

Plaintiff proceeded to file complaints with the Federal Student Aid Ombudsman Group, U.S. Department of Education's Office for Civil Rights, and ASU's Office of University Rights and Responsibilities. (FAC ¶¶ 75–82.) Nothing came of the former two complaints, and Plaintiff abandoned the latter after becoming wary that his statements could be used against him in future legal proceedings. (FAC ¶¶ 75–82.) Plaintiff also requested an ASU internal ombudsman to mediate his concerns, but that position was vacant at the time. (FAC ¶ 77.)

In August 2025, ASU recorded his degree in his official school transcript. (FAC ¶ 28.) Despite the degree conferral, ASU continues to withhold Plaintiff's physical diploma, maintains a financial hold on his student account, and denies him the opportunity to apply to ASU's graduate programs. (FAC ¶¶ 83–85.) According to Plaintiff, the damage to his credit score impairs his ability to qualify for private student loans and other financing and is expected to hinder his job and education prospects for employers and schools that conduct credit or background checks. (FAC ¶ 88.)

. . .

- 4 -

Plaintiff now sues ABOR, ASU, and Individual Defendants on the following claims: (1) violation of his Fourteenth Amendment right to procedural due process under 42 U.S.C. § 1983 against Individual Defendants; (2) violation of Title II of the Americans with Disabilities Act ("ADA") against all Defendants; (3) violation of § 504 of the Rehabilitation Act of 1973 ("RA") against ABOR; (4) declaratory judgment under 28 U.S.C. § 2201 against all Defendants. (FAC ¶¶ 98–126.) ABOR presently moves to dismiss Counts Two, Three and Four on behalf of itself and ASU (Doc. 41) and the Individual Defendants separately move to dismiss Counts One, Two and Four (Doc. 47).

## II.    LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth

and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.    ANALYSIS

### A.    Claims against Individual Defendants

#### i.    *Count One*

Section 1983 provides a method for a person to vindicate the deprivation of their rights secured by the Constitution and federal laws. *West v. Atkins*, 487 U.S. 42, 48 (1988). A procedural due process claim requires a plaintiff to allege (1) the existence of a property or liberty interest protected by the Constitution, (2) a deprivation of the interest by government action, and (3) a lack of due process. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008).

As to the first prong of the analysis, Plaintiff alleges that he holds two protected interests: (1) "the conferred degree and . . . ordinary documentation associated with graduation, including his diploma and access to accurate educational records"; and (2) "the fair and accurate maintenance of his educational and financial account status." (FAC ¶¶ 100–01.) While unclear in his pleading, Plaintiff later clarifies in his response that the first interest is a property interest, while the second is a liberty interest. (Doc. 53 at 11–15.)

"Property interests are not created by the Constitution; instead, they are created and their dimensions are defined by . . . an independent source such as state law." *Redd v. Guerrero*, 122 F.4th 1203, 1210 (9th Cir. 2024) (citation modified) (noting that the State of California created a property interest when it codified the right to counsel on habeas for death row prisoners in state law).

Plaintiff argues that he has a property interest in his "conferred university degree" based on the Ninth Circuit's decision in *Dudley v. Boise State University*, 152 F.4th 981 (9th Cir. 2025). (Doc. 53 at 11–12.) In *Dudley*, the plaintiff graduated and obtained a

bachelor's degree from an Idaho state university. 152 F.4th at 987. Months later, the university discovered that the plaintiff violated school policies during her internship for a state agency. *Id*. The university retroactively changed her internship grade to "failing" which rendered her transcript as "invalid" and ineligible for graduation that she already attended. *Id*. Soon after, the university decided to rescind the plaintiff's degree. *Id*. The Ninth Circuit found that Idaho law vested in students, including the plaintiff, a property interest in their degrees by mandating university faculty to confer a degree once the student completes the program. *Id*. at 991–92.

Plaintiff argues that *Dudley* controls here and means that he has a property interest in his degree. (Doc. 53 at 11.) Individual Defendants argue, and the Court agrees, that *Dudley* is inapposite. First, *Dudley* applies Idaho state law and does not establish a property interest in the conferral of degrees under the laws of Arizona.[2] Second, even if Plaintiff does have a property interest in the conferral of his degree, that is not the property interest at issue here. In his amended pleading and papers submitted before the Court, Plaintiff makes clear that he was, in fact, conferred his degree, and his transcript reflects as much. Instead, Plaintiff challenges ASU's decision to withhold the physical diploma evincing his degree.

To the extent Plaintiff argues *Dudley* holds that a physical diploma is an independent "property interest" that warrants due process protection (*see* Doc. 53 at 12), the Court does not share his interpretation. While the Ninth Circuit characterized physical diplomas as "evidence of a bundle of legal rights" and "represents" the rights and responsibilities of a degree, it did not say that the diploma *itself* was a legal right. *Dudley*, 152 F.4th at 992. Even if it had, the property right at issue in *Dudley* was based on Idaho state law and says

---

[2] Plaintiff points to an ASU policy that mandates the president to "sign[] all duly authorized certificates and diplomas, and issue[] all degrees conferred by the university" (Doc. 53 at 2, 11). Assuming the Court can take judicial notice of this policy, it is unlike the Idaho university policy that declared the "[c]ompletion of the program of instruction results in . . . conferring of a degree upon the student . . ." *Dudley*, 152 F.4th at 992. Rather, this ASU policy speaks only to what happens once a degree was conferred, not when it must be conferred.

nothing about the entitlements conferred by the State of Arizona when it comes to physical diplomas in public higher education.

Finally, Plaintiff argues that 34 C.F.R. § 668.14 "restricts institutions from withholding official transcripts as a debt-collection tool." (Doc. 53 at 12.) Even if the Court were to construe this federal regulation as an "independent source" that creates a property interest, it would do so only as to official transcripts, not physical diplomas. 34 C.F.R. § 668.14. Plaintiff does not allege that his official transcript was withheld, so this federal regulation appears to be irrelevant.

Turning to Plaintiff's alleged liberty interest, "[i]n a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). A liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," or where the government "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* at 573 (citation modified). However, reputation alone is not a liberty protected by the due process clause. *Paul v. Davis*, 424 U.S. 693, 701, 709 (1976). Rather, a separate right or status created by state law or some other independent source must have been altered or extinguished by the government *in addition to* the purported injury to a person's reputation. *Id.* at 710–12. This is referred to as the "stigma-plus" test. *See Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

Here, Plaintiff argues that he meets the stigma-plus test because ASU referred his debt to a collection agency that reported the debt to credit reporting agencies (the "stigma"), and continues to withhold his diploma and future graduate-level education (the "plus"). (Doc. 53 at 14–15.) But Plaintiff does not allege that ASU participated in any credit reporting or that it published that credit score to others; that is being done by a third-party collection agency.[3] Rather, the action taken by ASU, and challenged by Plaintiff here, is

---

[3] Even if ASU's debt referral constitutes a "statement" that affects Plaintiff's reputation, this Court doubts that the actions or reactions of third parties to that statement would satisfy the stigma-plus test. *See generally WMX Techs., Inc. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996) ("[T]he 'stigma-plus' test requires that the defamation be accompanied by an

that it referred his delinquent debt to a collection agency. Plaintiff identifies no state-created interest that insulates undergraduate student debt from referral to collection agencies or generally from collection efforts or credit reporting practices.

While unclear, to the extent Plaintiff asserts that he has an interest in pursuing graduate-level education opportunities at ASU (*see* Doc. 53 at 14), Plaintiff identifies no state law or independent source that confers him such an interest, and Individual Defendants identify at least one case from this District that found *no* protected interest in higher education under Arizona law. *See Unknown Party v. Arizona Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2019 WL 7282027, at *10 (D. Ariz. Dec. 27, 2019). To the extent Plaintiff asserts that he has an interest in ASU's billing processes, which is also unclear (*see* Doc. 53 at 14), the law rejects that a property or liberty interest exists in a university's internal processes. *Dudley*, 152 F.4th at 991 ("[The university's] disciplinary process cannot be [the plaintiff's] property for due process purposes. Concluding otherwise would place the cart before the horse.").

Plaintiff fails to otherwise identify any other state-created property or liberty interest at issue here. The Court must dismiss his § 1983 claim for failure to state an underlying constitutional violation.

           ii.       *Counts Two and Four*

In both Counts Two and Four, Plaintiff names Individual Defendants (in their official capacities) and ABOR as defendants. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As to Count Two, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008); *Benson v. Hemet*

injury directly caused by the Government, rather than an injury caused by the act of some third party."), *dismissed for lack of jurisdiction*, 104 F.3d 1133 (9th Cir. 1997); *Cooper v. Dupnik*, 924 F.2d 1520, 1533 (9th Cir. 1991) (approving *in dicta* Third Circuit case law holding that the reactions of third parties to a government's statement about the plaintiff did not satisfy the stigma-plus test), *aff'd in relevant part*, 963 F.2d 1220 (9th Cir. 1992).

*Police Dep't*, No. 520CV02230DMGSHK, 2021 WL 8741957, at *13 (C.D. Cal. Nov. 9, 2021) ("[A] plaintiff may assert a claim under Title II of the ADA against an entity, *or* an individual in his or her official capacity.") (emphasis added); *Cox v. Lewis*, No. 220CV1792JCMDJA, 2021 WL 4340502, at *2 (D. Nev. Sep. 23, 2021) (dismissing ADA claim against officials where the entity was also named). Accordingly, the Court dismisses Count Two against Individual Defendants as redundant.

While Count Four also names Individual Defendants and ABOR as defendants, the basis for declaratory judgment sought against Individual Defendants rests, in part, upon their purported conduct underlying Count One, of which ABOR is not named. Accordingly, the Court will not dismiss Count Four simply because it names both government officials and the entity they represent. Still, the Court agrees with Individual Defendants (*see* Doc. 54 at 14) that Count Four must still be dismissed because Plaintiff fails to assert a due process violation underlying the predicate § 1983 claim, as addressed above. *See Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir. 1995), *as amended* (July 10, 1995); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097 (N.D. Cal. 2022) ("The Declaratory Judgment Act does not provide an independent theory for recovery; if the underlying claims are dismissed, then there is no basis for any declaratory relief.") (citation modified). This claim must also be dismissed.

### B. Claims against ABOR

#### i.     *Counts Two and Three*

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Because Title II of the ADA was modeled after § 504, *see* 42 U.S.C. § 12132, the two "are interpreted coextensively because there is no significant difference in the analysis of rights and obligations created by each provision. Accordingly, we will limit our discussion to the

ADA claim, but with the understanding that the following analysis will equally apply to the RA claim." *Mayfield v. City of Mesa*, 131 F.4th 1100, 1109 (9th Cir. 2025).

"[T]he crux of a reasonable accommodation claim [under the ADA] is a facially neutral requirement that is consistently enforced" and "particular accommodations are necessary to level the playing field." *McGary v. City of Portland*, 386 F.3d 1259, 1266–67 (9th Cir. 2004). While the ADA "do[es] not require an academic institution to make fundamental or substantial modifications to its programs or standards," it does "create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary to enable the individual to meet the standards in question." *Wong v. Regents of Univ. of California*, 192 F.3d 807, 818 (9th Cir. 1999), *as amended* (Nov. 19, 1999) (citation modified).

To state a claim under Title II, a plaintiff must allege that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's program, or was otherwise discriminated against by the public entity; and, (3) that exclusion, denial of benefits, or discrimination was by reason of his disability. *Mayfield*, 131 F.4th at 1109.

Here, Plaintiff alleges that he was unable to timely comply with ASU's filing deadlines for aid and SAP appeal due to his disability and confusion of ASU's policies. Even though ASU allegedly knew of Plaintiff's disability, it declined to review Plaintiff's circumstances, retroactively disburse his federal student aid for prior terms, and claw back its referral of the unpaid debt to a collection agency. These failures to accommodate Plaintiff's disability resulted in his exclusion from using federal student aid, accessing the SAP appeal program, disputing his debt, receiving his physical diploma, and pursuing further educational and employment opportunities.

ABOR first argues that Plaintiff fails to allege that he is a "qualified individual" because he exceeded the maximum credit hours imposed by SAP standards as alleged in his pleading (FAC ¶ 27), and this rendered him ineligible for federal student aid based on ASU's published policies that Plaintiff references in his pleading. (Doc. 41 at 7–8.)

- 11 -

In response, Plaintiff does not dispute that he exceeded the credit hour allotment allowed by ASU's SAP program or that federal student aid standards incorporate ASU's credit hour requirement—in fact, he alleges as much in his amended pleading. (*See* Doc. 43 at 3; FAC ¶¶ 35–39.) Instead, Plaintiff contends that "[w]hether [he] ultimately qualified for Title IV disbursement for a particular term does not automatically answer whether [he] was denied equal access to university processes." (Resp. at 4.) Not so. His qualification for the program from which he was allegedly excluded is an essential element of his claim.

Plaintiff attempts to recharacterize his ADA claim as one that does not challenge the denial of federal student aid. Rather, he suggests that his ADA claim challenges "ASU's administrative services more broadly."[4] (Doc. 43 at 9.) Those administrative services, according to Plaintiff, would allow him to:

> (1) receive the physical diploma documenting that degree; (2) access a billing dispute process before the university refers his account to collections and damages his credit; (3) be free from unwritten, ad hoc conditions that appear nowhere in published policy; and (4) apply to graduate programs at the same institution without automatic disqualification based on a disputed balance.

(Doc. 43 at 9.) Plaintiff argues that, "[e]ven accepting *arguendo* that Plaintiff was not SAP-eligible for federal student aid, that does not render him unqualified for access to ASU's other administrative processes—processes that are causing him ongoing harm." (Resp. at 9.) Perhaps, but it does not necessarily render him qualified, either. Plaintiff must still allege sufficient facts, not merely conclusory statements, that he was otherwise qualified to participate in, but was denied or excluded from, those services. Based on facts currently pled, he does not sufficiently allege that he was qualified to receive his physical diploma[5]

---

[4] The Court has trouble squaring Plaintiff's argument with the plain language of his amended pleading. For instance, Plaintiff alleges that ASU knew that his disability "materially affected his ability to navigate complex financial-aid processes and internal deadlines," he requested "reasonable modifications to financial-aid timing, account-hold procedures, and related administrative processes," and was categorically denied those modifications. (*See* FAC ¶¶ 106–22.) Still, the Court will accept Plaintiff's post-hoc characterization of his claim for the purpose of resolving the pending Motion to Dismiss.

[5] In his responsive brief to Individual Defendants' Motion, Plaintiff argues that ASU policy may permit, but does not mandate, the university to withhold his diploma due to his

or apply to graduate programs. While the Court can infer that Plaintiff may have been "qualified" to receive billing support by virtue of holding a delinquent debt, he concededly alleges that ASU provided a "general number" that he could call to ask questions about billing, which directly contradicts his assertion that he was denied or excluded from billing services. (FAC ¶ 55.) Plaintiff having failed to sufficiently state that he was qualified for or was denied access to ASU's administrative services, the Court will dismiss Counts Two and Three against ABOR.

ii.      *Count Four*

Plaintiff's claim for declaratory judgment against ABOR is predicated on the now-dismissed Counts Two and Three, so it must also be dismissed. *See Hoeck*, 57 F.3d at 787; *Hammerling*, 615 F. Supp. 3d at 1097.

**C.    Leave to Amend**

If a defective complaint can be cured, the plaintiff is entitled to amend the complaint before the action is dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Futility alone can justify the denial of leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003). Here, amendment of Count One and the portion of Count Four asserted against Individual Defendants is futile for two reasons: (1) Plaintiff twice attempted to state a § 1983 claim and twice failed to identify any source of state law that affords him a protected interest in his physical diploma, the manner in which ASU processes his delinquent debt, or anything else; and, (2) the case law does not support that those protected interests exist. Amendment of Count Two as to Individual Defendants is also futile because the law is clear that government officials need not be named with the entity that they represent where the challenged policies or customs underlying the claim is the same.

But other aspects of Plaintiff's claims might be cured by additional, well-pled facts. Accordingly, the Court grants Plaintiff leave to amend Count Three and the portion of Counts Two and Four asserted against ABOR. Plaintiff may offer a Second Amended

_____

delinquent debt. (Doc. 53 at 17.) Even considering this argument as applied to ABOR's Motion, whether ASU has the discretion to withhold a diploma does not answer whether Plaintiff was otherwise qualified to receive it, and such facts are notably missing from the amended pleading.

- 13 -

Complaint only if he can state the necessary additional factual allegations to state those claims in compliance with his Rule 11 obligations. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 545 (1991) (Rule 11 applies to *pro se* litigants).

**IT IS ORDERED** granting Plaintiff's Motion for Leave to Exceed Page Limit for Response to Defendant's Motion to Dismiss First Amended Complaint (Doc. 44).

**IT IS FURTHER ORDERED** granting Defendant Arizona Board of Regents' Motion to Dismiss First Amended Complaint (Doc. 41).

**IT IS FURTHER ORDERED** granting Individual Defendants' Motion to Dismiss First Amended Complaint (Doc. 47).

**IT IS FURTHER ORDERED** dismissing Plaintiff's First Amended Complaint (Doc. 25).

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend Count Three and the portion of Counts Two and Four asserted against ABOR, to allege additional facts pursuant to the Court's admonition above. Should Plaintiff choose to do so, he may file a second amended complaint and a separate Notice of Filing Second Amended Complaint with an attached redlined copy showing the changes between the First Amended Complaint and the amendment no later than **fourteen (14) days** from the date of this Order. No new claims may be added to an amendment absent leave of court pursuant to Federal Rule of Civil Procedure 15 and Local Rule 15.1.

Dated this 27th day of July, 2026.

_____
Honorable John J. Tuchi
United States District Judge

- 14 -